UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTT STURGEN,

                             Plaintiff,                      8:22-cv-00049 (BKS/DJS)

v.

MERRICK GARLAND, Attorney General,
U.S. Department of Justice,

                             Defendant.
_____

**Appearances:**

*For Plaintiff:*
Kevin C. Crayon, II
Crayon Law Firm
125 Townpark Drive, Suite 300
Kennesaw, Georgia 30144

*For Defendants:*
Carla B. Freedman
United States Attorney
Northern District of New York
John D. Hoggan, Jr.
Assistant United States Attorney
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Scott Sturgen brings this action alleging sex-based discrimination and whistleblower retaliation by his former employer, Ray Brook Federal Correctional Institution ("FCI Ray Brook"), a United States Bureau of Prisons ("BOP") facility in Ray Brook, New York. (*See generally* Dkt. No. 1). The Complaint names Merrick Garland, Attorney General for

the United States Department of Justice as the Defendant and asserts four causes of action: involuntary retirement/constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.; sex-based disparate treatment discrimination, in violation of Title VII; harassment and hostile work environment, in violation of Title VII; and retaliation for whistleblower activity in violation of the Whistleblower Protection Enhancement Act ("WPA"), 5 U.S.C. § 2302(b)(8) and (9). (*Id.*). Presently before the Court is Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56. (Dkt. No. 25). Plaintiff opposes Defendant's motion. (Dkt. Nos. 26, 27). Having considered the parties' submissions, including Defendant's reply, (Dkt. No. 28), and the parties' supplemental filings, (Dkt. Nos. 30, 32), the Court denies Defendant's motion for summary judgment without prejudice to renewal with additional briefing.

## II.  BACKGROUND[1]

### A.  General Factual Allegations

Many of the events relevant to this case occurred at FCI Ray Brook, where Plaintiff worked as the Infection Control Nurse ("ICN"), during the onset of the COVID-19 pandemic in March 2020, and continued through October 23, 2020, the date of Plaintiff's "retirement."[2] (Dkt. No. 25-48, ¶ 3; Dkt. No. 26-1, ¶ 3). As the ICN, Plaintiff was "was expected to, among other things" "coordinate" and communicate "with Regional Infectious Disease Control"; "teach staff about Infectious Disease Control"; "employ mitigation strategies for inspection spread"; and

---

[1] The facts are drawn from Defendant's Statement of Material Facts Not in Dispute, (Dkt. No. 25-48), Plaintiff's Response to Defendant's Statement of Material Facts, (Dkt. No. 26-1), and Plaintiff's Statement of Additional Material Facts, (Dkt. No. 26-2), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

[2] Whether Plaintiff's retirement was "voluntary" or an "involuntary retirement/constructive discharge" is at issue in this case.

"stay abreast of rapidly changing protocol." (Dkt. No. 25-48, ¶ 3; Dkt. No. 26-1, ¶ 3 (quotation marks omitted); Dkt. No. 25-4, at 2, 7).

Plaintiff asserts that during the relevant time period, he "was excluded from quarterly meetings and Infectious Disease Control meetings" at FCI Ray Brook, while Kimberly Sorrell, a female nurse practitioner, was included in meetings with the Warden, "although the meetings were more relevant to Plaintiff's position than Sorrell's position," which "was patient care." (Dkt. No. 26-2, ¶¶ 15–16). Plaintiff claims that:

> [He] was ordered not to take federal government-approved actions to stop the transmission of Covid-19 by quarantining positive Covid inmates. He was ordered not to communicate in any way with the Regional Infectious Disease Control staff regarding the pandemic. [FCI Ray Brook's Acting Health Services Administrator] specifically ordered Plaintiff not to report data to the Region (Clinical Director).
>
> Management insisted on approving Plaintiff's communications with the Region prior to Plaintiff sending his communications. Plaintiff had previously been performing his reporting function for approximately 10 years without needing to seek approval from management.
>
> [FCI Ray Brook's Acting Health Services Administrator] counseled Plaintiff for over two hours on October 7, 2020 while informing Plaintiff that the Warden was mad at him for recommending to the FCI Administration that a positive COVID inmate was identified and the unit had to be quarantined. Plaintiff had reached out to the Region, which was his job, and he reached out to the Region Infectious Disease Control Coordinator.
>
> Plaintiff was ordered by Executive Staff, under the direction of the Warden, not to send e-mails, memos, or phone calls to Regional resources, which was inherent in Plaintiff's job and appropriate.

(Dkt. No. 26-2, ¶¶ 19–21, 25 (internal citations omitted)). Plaintiff also claims that his "schedule was changed all the time" and that he "was working weekends, afternoons, [and] they were using [Plaintiff] as vacation relief" and "training relief." (Dkt. No. 25-4, at 8). Plaintiff states that the

3

scheduling changes happened to him, "much more so than Sorrell." (Dkt. No. 25-4, at 8). Plaintiff asserts that "these conditions led directly to his forced resignation" and that he "never would've left if, among the other events described in the citations above, he had been allowed to do his job, not been . . . expos[ed] to his life being jeopardized, and the potential damage to his career in being scapegoated for the failures of the Agency." (Dkt. No. 26-2, ¶ 23).

On or about May 12, 2020, Plaintiff emailed the BOP's "Consolidated Benefits Center," advised that he believed he would be eligible for, and was considering, retirement on August 1, 2020, and requested that he "be assigned a retirement counselor for further arrangements." (Dkt. No. 25-44, at 3; Dkt. No. 25-43, ¶ 5). Ultimately, Plaintiff submitted his retirement paperwork on or about October 19, 2020. (Dkt. No. 25-43, ¶ 9). Plaintiff's "retirement date" was October 23, 2020. (Dkt. No. 25-43, ¶ 11).

**B.     Procedural History**

On or about December 3, 2020, Plaintiff initiated contact with the United States Equal Opportunity Commission ("EEO Office"). (Dkt. No. 25-29, at 2); *see also* 29 C.F.R. § 1614.105. On or about December 11, 2020, Plaintiff filed a whistleblowing complaint[3] with the Office of Special Counsel ("OSC"). (Dkt. No. 25-31, at 5). In a letter dated January 21, 2021, an OSC attorney informed Plaintiff the "Disclosure Unit" had "completed its review of the information [Plaintiff] referred" alleging "a violation of law, rule, or regulation and a substantial specific danger to public health and safety by officials at the Department of Justice (DOJ), Bureau of Prisons (BOP)," and FCI Ray Brook. (Dkt. No. 25-32, at 2). "Based on the information provided, [OSC could not] conclude that there is a substantial likelihood that BOP officers acted outside their discretion." (*Id.* at 3). OSC advised Plaintiff that "[s]hould [he] wish to pursue this matter

---

[3] The parties do not indicate where, if at all, Plaintiff's OSC complaint is located in the summary judgment record.

4

further," he could contact the Inspector General at the Department of Justice and that it was closing the file. (*Id.*).

On September 30, 2021, the DOJ's "Complaint Adjudication Office" issued a "Final Agency Decision" concluding that the record did not support a claim of disparate treatment, hostile work environment, or a constructive discharge on the basis of sex or prior EEO activity." (Dkt. No. 25-30, at 16).

On October 13, 2021, Plaintiff filed an "Appeal of Agency Personnel Action or Decision" regarding his "Involuntary Retirement" with the Merit Systems Protection Board ("MSPB"). (Dkt. No. 25-31, at 4). The "Appeal" reflects Plaintiff's claims as follows:

> Complainant said that FCI officials ordered him not to follow health protocols. On October 23, 2020, he was "forced to resign due to intolerable working conditions. [(2)] Additionally, [he] allege[d] that management subjected [him] to adverse employment actions for performing duties required by [his] medical profession. [(3)] Lastly, [he] allege[d] that the Warden jeopardized community public health regarding the COVID-19 pandemic by refusing to follow federal and BOP guidelines in responding to the pandemic." Obtained ROI proves plaintiff claims other than Sex Discrimination.

(Dkt. No. 25-31, at 6).[4]

In an "Initial Decision" dated November 19, 2021, MSPB Administrative Judge ("AJ") Nicole DeCrescenzo found that although it was "clear that the [Plaintiff's] work conditions in 2020 were suboptimal," Plaintiff had "failed to nonfrivolously allege that his retirement was involuntary" and therefore dismissed Plaintiff's appeal "for lack of jurisdiction" and without reaching the merits of Plaintiff's discrimination claims. (Dkt. No. 25-22, at 2–18; *see also id.* at 6

---

[4] Question 9 on the MSPB appeal form asks: "Did you file a whistleblowing complaint with the [OSC]?" (Dkt. No. 25-13, at 5). Plaintiff checked "Yes" and stated that he filed the complaint with OSC on December 11, 2020. (*Id.*). Question 10 asks "Have you received written notice that the [OSC] made a decision or terminated its investigation?" (*Id.*). Plaintiff checked "Yes" and stated that the date of that decision was January 12, 2021. (*Id.*). Plaintiff's MSPB appeal form does not otherwise reflect a whistleblower claim.

5

(explaining that once the MSPB's jurisdiction has been established through "nonfrivolous" allegations of involuntary removal, "issues of discrimination may then be adjudicated under the standards applicable for proof of discrimination under Title VII as a mixed case")).[5] This decision "became final on December 24, 2021." (Dkt. No. 1, ¶ 9; Dkt. No. 25-33, at 9). On January 20, 2022, Plaintiff filed the instant action. (Dkt. No. 1).

## III.   DISCUSSION

### A.   CSRA Administrative Procedure

"Under the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 et seq., certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012)). "The CSRA 'prescribes in great detail the protections and remedies applicable to adverse personnel actions against federal employees,'" *id.* (quoting *Elgin*, 567 U.S. at 11), and established the MSPB "to review certain serious personnel actions against federal employees," *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 422 (2017) (citing 5 U.S.C. § 1101 et seq.). For example, a federal employee may appeal a serious personnel action, such as discharge or involuntary retirement, to the MSPB. *See Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) ("If (but only if) the action is particularly serious—involving, for example, a removal from employment . . . —the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes.").

---

[5] *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed Cir. 2006) (en banc) (explaining that to establish the MSPB's jurisdiction over an involuntary retirement claim, an employee must make a "non-frivolous allegation" that his retirement or resignation was involuntary); *Shoaf v. Dep't of Agr.*, 260 F.3d 1336, 1340–41 (Fed. Cir. 2001) ("A decision to resign or retire is presumed to be voluntary," and "[a]n employee who voluntarily resigns or retires has no right to appeal to the MSPB.").

6

The CSRA also permits a federal employee to bring a whistleblower claim under the WPA before the MSPB. *See Chinniah*, 62 F.4th at 702 ("The WPA is part of the CSRA and prohibits certain federal employees from taking adverse personnel actions against 'any employee' for reporting 'any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.'" (quoting 5 U.S.C. § 2302(b)(8)(A)). There is a procedural prerequisite to raising a WPA claim before the MSPB: "[u]nder the CSRA, employees with WPA claims must generally 'seek corrective action from the [Office of] Special Counsel" before bringing those claims to "the [Merit Systems Protection] Board.'" *Id.* (quoting 5 U.S.C. § 1214(a)(3)). As the Second Circuit recently reiterated, not only does "the CSRA provide[] the exclusive remedy for claims brought pursuant to the WPA," *id.* (quoting *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006)), but "[u]nder the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit," *id.* (quoting *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996)).

In addition to appealing serious personnel actions and bringing WPA claims to the MSPB, if the employee claims violation of a federal antidiscrimination law, such as Title VII, in connection with that personnel action, he or she may file a "mixed-case" appeal with the MSPB. *See Perry*, 582 U.S. at 424 (explaining that a federal employee complaining "of a personnel action serious enough to appeal to the MSPB" alleging "that the action was based on" a violation of federal antidiscrimination laws, "is said (by pertinent regulation) to have brought a 'mixed case.'" (quoting *Kloeckner*, 568 U.S. at 44)); *see also*, *e.g.*, *Wallace v. Esper*, No. 18-cv-6525, 2019 WL 4805813, at *11, 2019 U.S. Dist. LEXIS 169758, at *35 (S.D.N.Y. Sept. 30, 2019) (noting that the plaintiff had raised her "WPA claim as part of a 'mixed case'" also alleging

7

violation of federal antidiscrimination laws before the MSPB). Thus, courts have found that the CRSA's "elaborate framework demonstrates Congress' intent to entirely foreclose . . . extrastatutory review . . . to those employees to whom the CSRA grants administrative and judicial review." *Chinniah*, 62 F.4th at 702 (quoting *Elgin*, 567 U.S. at 11). However, once the MSPB has dismissed a mixed case or a case involving a claim under the WPA, the employee may seek judicial review in district court. *Perry*, 582 U.S. at 437; *see also Ghaly v. U.S. Dep't of Agric.*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002) ("After exhausting these administrative remedies, employees who have been aggrieved by a final MSPB decision may seek judicial review." (citing 5 U.S.C. § 1214(c)(1)); *Wallace*, 2019 WL 4805813, at *11, 2019 U.S. Dist. LEXIS 169758, at *35 (explaining that in order for a district court to have "jurisdiction: (1) the plaintiff asserting the WPA claim must have raised it before the MSPB; (2) as part of a so-called mixed case—that is, a case involving a personnel action serious enough to appeal to the MSPB, such as removal, together with discrimination claims") (quotation marks omitted) (citing *Kerr v. Jewell*, 836 F.3d 1048, 1053–54 (9th Cir. 2016)).

  **B. Judicial Review of MSPB Decision**

  Under 5 U.S.C. § 7703(c), the Court must affirm the MSPB's decision as to any non-discrimination claim unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) [was] obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008). "Under this standard, [the Court] review[s] determinations of the Board concerning its jurisdiction de novo" but "the [f]indings of fact underlying the Board's jurisdictional decision are reviewed for substantial evidence." *Id.* The review of the MSPB's determination of a nondiscrimination claim is made "solely upon the administrative record." *Figueroa v. Nielsen*, 423 F. Supp. 3d 21, 28 (S.D.N.Y. 2019) (quoting

*Fineman v. U.S. Postal Serv.*, 555 F. Supp. 1336, 1341 (S.D.N.Y. 1983)). However, a plaintiff is entitled to de novo review of his or her federal discrimination claim. *Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998).

### C.  Deficiencies Precluding Summary Judgment[6]

On November 21, 2023, Defendant moved for summary judgment seeking dismissal of all claims, including Plaintiff's whistleblower retaliation claim.[7] (Dkt. No. 25). With respect to the whistleblowing claim, Defendant argued in its opening brief that the Court must confine its review to the "administrative record" before the MSPB, and affirm "unless the decision is found to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.'" (Dkt. No. 25-1, at 24 (quoting 5 U.S.C. § 7703(c)). However, as Plaintiff noted in his response papers, Defendant failed to file the administrative record. (Dkt. No. 26-3, at 5 (Plaintiff noting that "[t]he instant court cannot determine whether the AJ's decision was based on substantial evidence where there is no record or evidence to review"). Notwithstanding Plaintiff's attempt to point out the missing record, Defendant did not file it until directed to do so by the Court. (Dkt. Nos. 29, 30). In any event, Defendant's belated filing of the administrative record does not appear to have cured the initial omission as Plaintiff has disputed the completeness of the record. (*See* Dkt. No. 32 (Plaintiff asserting that the

---

[6] As discussed in this section, there is a question as to the organization and completeness of the administrative record. There are also foundational legal issues that require further briefing with respect to whether Plaintiff properly exhausted his remedies before the OSC and MSPB. Thus, while the Court is cognizant that Defendant's motion also seeks summary judgment as to Plaintiff's Title VII claims, in the interest of judicial efficiency and working from an complete summary judgment record, the Court declines to address the remainder of Defendant's motion until the parties have resolved the issues the Court has identified.

[7] Plaintiff does not appear to seek judicial review of the AJ's conclusion with respect to his nondiscrimination claim: that Plaintiff failed to allege a serious personnel action, i.e., involuntary retirement. Plaintiff seems to pursue his claim of involuntary retirement (and hostile work environment) solely as a discrimination claim under Title VII and a retaliation claim under the WPA. (*See generally* Dkt. No. 1).

9

administrative record Defendant filed "does not have any organization or bookmarks" and "is difficult to ascertain whether items were omitted" and providing "[f]or ease of review" additional items from the record that "reflect the arguments made by Plaintiff")).

Even if the Court could set aside the issue of the administrative record, the parties' failure to address foundational legal issues would preclude summary judgment. In addition to questioning the applicability of the above-outlined standard of review, Plaintiff argued that such narrow review is unwarranted because the AJ "*omitted any reference to Plaintiff's whistleblower claim*, which wasn't pursued independently but was part of a broader context involving numerous untenable working conditions culminating in involuntary retirement."[8] (Dkt. No. 26-3, at 2 (emphasis added)). Plaintiff appears to be correct. The AJ's decision discusses the standard applicable to an involuntary retirement claim, (*see* Dkt. No. 25-33, at 4–7; *see also supra* Section II.B.), but seems to contain no discussion of the legal elements a whistleblower claim, *see, e.g.*, *Cahill v. Merit Sys. Prot. Bd.*, 821 F.3d 1370, 1373 (Fed. Cir. 2016) (establishing a whistleblower retaliation claim requires a plaintiff to show he or she exhausted "remedies before the Office of Special Counsel and present 'non-frivolous allegations' that (1) [] made a protected disclosure under 5 U.S.C. §§ 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D) and that (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)"). Perhaps this is because, as Plaintiff himself asserts, Plaintiff did not appeal "a whistleblower <u>retaliation</u> claim" to the MSPB. (*Id.* at 5 (emphasis in original)). Indeed, Plaintiff seems to suggest that he never complained of whistleblower retaliation to the OSC, pointing out that the OSC's January 21, 2021 letter determination "was <u>not</u> regarding a Whistleblower <u>retaliation</u> complaint, *but rather a disclosure where the signature*

---

[8] Defendant provided no response to this argument.

*line of the OSC letter indicate [sic] this is from the OSC's <u>disclosure unit</u>.*" (*Id.* (emphasis in original)). As stated above, "[u]nder the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Chinniah*, 62 F.4th at 702 (quoting *Weaver*, 87 F.3d at 1433). And without briefing from either party: (1) addressing the implications of Plaintiff's assertion that he did not complain of whistleblower retaliation to the OSC on the Court's jurisdiction to consider his present whistleblower retaliation claim or (2) citing legal authority for the proposition that this Court may rule, in the first instance, on a whistleblowing retaliation claim on which the MSPB issued no decision, the Court concludes that any decision on the merits would be premature.

For all these reasons, Defendant's motion for summary judgment is denied without prejudice to renewal.

## IV.   CONCLUSION

Accordingly, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 25) is **DENIED without prejudice** to renewal; and it is further

**ORDERED** that any renewed motion for summary judgment must be filed within thirty (30) days of the date of this Memorandum-Decision and Order and must:

(1) Include a stipulated, organized, administrative record;

(2) Address, with citation to legal authority, whether Plaintiff has exhausted his administrative remedies before the OSC with respect to his whistleblower retaliation claim; and

(3) Address, with citation to legal authority, what impact the absence of discussion of Plaintiff's whistleblower retaliation claim from the AJ's decision has on the Court's

11

review of Plaintiff's present whistleblower claim, including whether remand is required.

**IT IS SO ORDERED.**

Dated: September 9, 2024

Brenda K. Sannes<br>Chief U.S. District Judge